Calvin HUDSON, Plaintiff,

v.

TEAMSTERS LOCAL UNION NO. 957,

and

United Parcel Service, Inc., Defendants.

No. C–3–80–529.

United States District Court,
S. D. Ohio, W. D.

March 23, 1982.

Robert K. Handelman, Columbus, Ohio, for plaintiff.

Sorrell Logothetis, Daniel N. Kosanovich, Dayton, Ohio, J. Alan Lips, Taft, Stettenius & Hollister, Cincinnati, Ohio, for defendants.

DECISION AND ENTRY ON PENDING MOTIONS; DEFENDANT TEAMSTERS' MOTION FOR SUMMARY JUDGMENT SUSTAINED IN PART AND OVERRULED IN PART; DEFENDANT UNITED PARCEL SERVICE'S MOTION FOR SUMMARY JUDGMENT SUSTAINED IN PART AND OVERRULED IN PART; CONFERENCE CALL SET TO DETERMINE NEW TRIAL DATE AND OTHER DATES

RICE, District Judge.

This matter came on to be heard by the Court upon motions for summary judgment filed by the Defendants, Teamsters Local Union No. 957 (Teamsters) (Doc. # 22) and the United Parcel Service, Inc. (UPS) (Doc. # 26). The Teamsters Local has moved for summary judgment with respect to Counts II, III, IV and V of the amended complaint filed by the Plaintiff, Calvin Hudson. UPS has moved for summary judgment with re-

spect to Counts I, IV, V and VI of the amended complaint. For the reasons set forth below, the motions are sustained with respect to Counts I, II and V, in part, of the amended complaint. The motions are over-ruled with respect to Counts III, IV, V, in part, and VI of said amended complaint.

## I. FACTUAL BACKGROUND

Plaintiff was employed as a package delivery driver with UPS from 1969 to 1979, and was a member of the Teamsters during that period. On April 25, 1979, Plaintiff had a truck accident at a customer's residence while making a delivery. He admits that he did not report the accident to UPS, but characterizes it as a "minor incident" and argues that he was never expected to report such incidents. UPS discharged Plaintiff on May 2, 1979, ostensibly for having failed to report the accident.

Plaintiff thereafter filed an unfair labor practice charge with the National Labor Relations Board (NLRB), alleging that UPS had discharged him due to his union activities. The Regional Director of the NLRB dismissed the charge, and the Office of Appeals of the NLRB denied Plaintiff's appeal of that decision.

Shortly after his discharge, Plaintiff also filed a grievance protesting his discharge, pursuant to the collective bargaining agreement between the Teamsters and UPS. Under this procedure, Plaintiff's grievance was first presented to the six-member Ohio Joint State Committee, on May 15, 1979. Plaintiff was represented by the Union at that time. The Committee came to an equally-divided vote on Plaintiff's grievance, and his claim was advanced to the Joint Area Committee (JAC), where Plaintiff was once again represented by the Union. His grievance was denied by the JAC on August 1, 1979.

On October 12, 1979, Plaintiff filed charges of discrimination against the Defendants with the Equal Employment Opportunity Commission (EEOC). As required by Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., the charges were referred to the applicable state agency, the Ohio Civil Rights Commission (OCRC). The Regional Director of the EEOC issued a "right-to-sue" letter (with respect to the Teamsters) on August 29, 1980, which Plaintiff alleges to have received on September 8, 1980. He filed his complaint in this Court on December 8, 1980.

The original complaint was divided into five counts. Count I alleged that UPS violated the collective bargaining agreement through an unjustified discharge and "harassment" prior to the discharge, and that the discharge was wrongfully premised on Plaintiff's exercise of his Section 7 rights under the National Labor Relations Act, 29 U.S.C. § 157. Count II alleges that the Teamsters violated its duty of fair representation, under § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, by its failure to properly represent Plaintiff in the grievance procedure. Count III is a Title VII charge against the Teamsters, and Count IV alleges that both the Teamsters and UPS discriminated on the basis of race, violative of 42 U.S.C. § 1981. Count V alleges that both Defendants conspired to deprive Plaintiff of his civil rights on the basis of his race, thus violating 42 U.S.C. § 1985(3). After receiving a "right-to-sue" letter from EEOC, permitting him to proceed against the UPS, Plaintiff moved to file an amended complaint. This Court sustained the motion on July 17, 1981. Count VI of the amended complaint alleges that UPS also violated Title VII. Plaintiff prayed for injunctive, declaratory, and monetary relief, and the amended complaint properly invoked the jurisdiction of this Court pursuant to 28 U.S.C. § 1343(3)–(4), 29 U.S.C. § 185 et seq., and 42 U.S.C. § 2000e et seq.

## II. MOTIONS FOR SUMMARY JUDGMENT

Both Defendants duly filed answers to the original and amended complaint, and moved for summary judgment pursuant to Fed.R.Civ.P. 56. Pursuant to Rule 56, both Plaintiff and Defendants have filed affidavits with their memoranda. (Docs. 22, 26 &

27). For convenience, this Court will consider said motions together. On a Rule 56 summary judgment motion, the burden is on the moving party to show conclusively that there exists no genuine issue as to any material fact, considering the evidence most favorably to the party against whom the motion is directed. *Heheman v. E. W. Scripps Co.*, 661 F.2d 1115, 1127 (6th Cir. 1981); *Watkins v. Northwestern Ohio Tractor Pullers*, 630 F.2d 1155, 1158 (6th Cir. 1980). With this standard in mind, this Court now considers the summary judgment motions with respect to each count in the Plaintiff's complaint.

### 1. Count I: MOTION SUSTAINED

UPS has moved for summary judgment with respect to Count I.

 The first count in the amended complaint alleges that the discharge by UPS violated both the collective bargaining agreement *and* Plaintiff's rights to engage in union-protected activity under 29 U.S.C. § 157. Defendant correctly points out that contesting an alleged discharge for union-related activity is within the exclusive jurisdiction of the NLRB, and cannot be brought under § 301 *unless* said discharge also violates a provision of the collective bargaining agreement. *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 561–62, 96 S.Ct. 1048, 1054–55, 47 L.Ed.2d 231 (1976); *Motor Coach Employees v. Lockridge*, 403 U.S. 274, 284–93, 91 S.Ct. 1909, 1916–21, 29 L.Ed.2d 473 (1971); *Ruzicka v. General Motors Corp.*, 649 F.2d 1207 (6th Cir. 1981). The agreement between the UPS and the Teamsters, however, does contain a provision prohibiting the employer from discriminating against an employee based on his union membership or activities. (Doc. 22, exh. A, p. 26). Such discriminatory conduct could include a discharge premised on union activities, as Plaintiff alleges herein. Thus, both allegations in Count I are cognizable under § 301 and will be so treated by this Court.

 The main point of contention in Counts I and II is whether Plaintiff's § 301 claim was timely filed in this Court. Congress did not enact a statute of limitations governing actions filed under § 301, and to determine the timeliness of such suits, a federal court must refer to the "appropriate state statute of limitations." *International Union, UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704–05, 86 S.Ct. 1107, 1112–1113, 16 L.Ed.2d 192 (1966). The Supreme Court recently decided a case providing this Court substantial guidance on *which* Ohio statute of limitation should be applied in this case. In *United Parcel Service, Inc. v. Mitchell*, 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981), the Court characterized a § 301 suit, similar to the one herein, as analogous to an action to vacate an arbitration award, *id.* at 61, 101 S.Ct. at 1563, and held that a New York statute of limitations on bringing suit to vacate such awards was applicable. *Id.* at 64, 101 S.Ct. at 1565.

Plaintiff and the Defendants do not seriously contest the relevance of *Mitchell* to the choice of a statute of limitation in this action. *Mitchell* clearly directs this Court to apply O.R.C. § 2711.13, which permits a plaintiff three months to file suit to set aside an arbitration award, rather than, for example, O.R.C. § 2305.07, which provides a six year statute of limitations for causes of action arising under a statute. What the parties *do* contest is whether *Mitchell* should be given retroactive effect so as to apply to the cause herein. Since Plaintiff filed his complaint in this Court over a year and four months after the grievance procedure was completed, applying the *Mitchell* case and O.R.C. § 2711.13 retroactively would bar his § 301 cause of action.

The Court itself in *Mitchell* applied the holding to the plaintiff in the case, determining that his § 301 suit was time-barred, and made no reference to the retroactivity issue. Similarly, several courts, including one within this District, have applied *Mitchell* to § 301 suits pending when *Mitchell* was handed down, and have not discussed the question of retroactivity. *See, Carpenters, Local 1020 v. FMC Corp.*, 658 F.2d 1285 (9th Cir. 1981); *Sear v. Cadillac Automobile Co.*, 654 F.2d 4 (1st Cir. 1981); *Davidson v. Roadway Express, Inc.*, 650

F.2d 902 (7th Cir. 1981); *D'Andrea v. American Postal Workers*, No. C–1–78–520, Slip op. (S.D.Ohio, Aug. 5, 1981). On the other hand, some courts have squarely addressed the retroactivity of *Mitchell*, and six decisions have held that *Mitchell* should be applied retroactively, *see, Service Employees Local 36 v. Office Center Services, Inc.*, 670 F.2d 404 (3rd Cir. 1982); *Brain v. Roadway Express, Inc.*, No. C80–2338, Slip op. (N.D. Ohio Dec. 3, 1981); *McCoy v. Truck Drivers Local 100*, 526 F.Supp. 1256 (S.D.Ohio 1981); *Taylor v. Spector Freightway System, Inc.*, No. C–2–78–1227 (S.D.Ohio Feb. 11, 1982); *Delcostello v. Teamsters*, 524 F.Supp. 721 (D.Md.1981); *Kikos v. Teamsters*, 526 F.Supp. 110 (E.D.Mich.1981). In contrast, two courts have refused to apply the decision retroactively. *See, Singer v. Flying Tiger Line, Inc.*, 652 F.2d 1349 (9th Cir. 1981); *Kennard v. United Parcel Service, Inc.*, 531 F.Supp. 1139 (E.D.Mich.1982).

■ Upon a careful review of these decisions, this Court is in agreement with those cases holding that *Mitchell* should be applied retroactively. In *Chevron Oil Co. v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971), the Supreme Court set out three factors to be considered when determining the non-retroactivity of a decision in the civil context. First, the decision must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed. Second, the merits and demerits in each case must be weighed by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. Third, the inequity imposed by the retroactive application must be weighed. *Id.* at 106–07, 92 S.Ct. at 355–56. Application of these three factors to the case herein establishes that *Mitchell* should be controlling, should be applied retroactively and should thus bar Plaintiff's § 301 action.

The first *Chevron Oil* factor weighs in Plaintiff's favor. While it is true, as the Defendants point out, that some decisions in *other* Circuits anticipated the *Mitchell* holding, the law in the Sixth Circuit was clear. In *Smart v. Ellis Trucking Co., Inc.*, 580 F.2d 215 (6th Cir. 1978), *cert. denied*, 440 U.S. 958, 99 S.Ct. 1497, 59 L.Ed.2d 770 (1979), the Court held that a § 301 action, similar to the one herein, would be governed by a Michigan statute of limitation concerning injury to persons or property. *Id.* at 217. The analogous Ohio statute provides two years in which to sue, O.R.C. § 2305.10, and Plaintiff claims to have relied on the *Smart* decision. Since there is no question that the holding in *Smart* does not survive *Mitchell, see, Kikos, supra*, 526 F.Supp. at 115, Plaintiff relied on "clear past precedent" which has been overruled.

However, the second and third *Chevron Oil* factors weigh in favor of applying *Mitchell* retroactively. The second factor requires determination of the purpose and effect of the rule in question. Applying the relatively short statute of limitations for vacating arbitration awards furthers the important federal policies of prompt disposition of labor disputes, *Mitchell, supra*, 451 U.S. at 64, 101 S.Ct. at 1564, and of insuring finality to arbitration and grievance decisions. *Ruzicka, supra*, 649 F.2d at 1212–13; *Marlowe v. Fisher Body*, 489 F.2d 1057, 1065 (6th Cir. 1973). Moreover, the retroactive application of the *Mitchell* rule will further, not retard, the operation of the rule, by insuring that judicial proceedings will not intolerably delay final resolution of labor disputes currently pending in Federal courts. *Kikos, supra*, 526 F.Supp. at 115; *Brain, supra*, Slip op. at 7.

Finally, the third *Chevron Oil* factor focuses attention on the inequitable character of a retroactive application. While such application will deprive Plaintiff, in the case herein, of his day in court on the § 301 claim, it will not deny him "any remedy whatsoever," *Chevron Oil Co., supra*, 404 U.S. at 108, 92 S.Ct. at 356, since, as will be explained below, his Title VII, § 1981 and § 1985(3) actions will remain, in part, before this Court. Even if the third factor did weigh in Plaintiff's favor, *all* the *Chevron Oil* factors, not merely one or two, must

be met to deprive a decision of retroactive application. *Cochran v. Birkel*, 651 F.2d 1219, 1223 n.8 (6th Cir. 1981); *Cash v. Califano*, 621 F.2d 626, 629 (4th Cir. 1980); *Delcostello, supra*, 524 F.Supp. at 724.

The decisions holding to the contrary can be distinguished. In *Singer, supra*, the Ninth Circuit panel cited *Chevron Oil*, but, curiously, did not discuss each of the three factors, only finding that retroactive application of *Mitchell* would be "inequitable." 652 F.2d at 1353. The *Singer* Court was perhaps motivated by the defendant having advanced the statute of limitations defense for the first time on appeal. *Id.* In contrast, Defendants herein, in any event, raised the defense in their answers to the amended complaint. Moreover, the *Singer* case is in conflict with a later decision by another panel of the Ninth Circuit. *See, Carpenters, Local 1020 v. FMC Corp., supra.* In *Kennard v. United Parcel Service, supra,* the Court relied particularly on the relative timeliness of the suit (the Plaintiff having filed sixty days after the arbitration award, with the applicable Michigan statute of limitations being twenty days) in holding that *Mitchell* should not bar the action. Transcript of Bench Opinion at 5–8. The Plaintiff herein, on the other hand, waited nearly a year and one-half to file suit. To the extent that the decision herein nevertheless conflicts with *Singer* or *Kennard*, this Court respectfully disagrees with them, noting especially that said cases are not binding as precedent on this Court.

 For these reasons, this Court holds that *Mitchell* should be applied retroactively, and that Plaintiff's § 301 action is time-barred by O.R.C. § 2711.13 for not having been brought within three months after the JAC decision.[1] Accordingly, the Defendant's motion for summary judgment with respect to his § 301 claim must be, and is, sustained.

### 2. Count II: MOTION SUSTAINED

The Teamsters Local has moved for summary judgment with respect to Count II.

The second count of the amended complaint alleges that the Teamsters violated § 301 when they failed to fulfill their duty of fairly representing him in the grievance process. For the reasons set out in Part II. Sec. 1. of this opinion, *supra*, said § 301 action is time-barred and the Defendant's motion for summary judgment with respect to it must be, and is, sustained.

### 3. Count III: MOTION OVERRULED

The Teamsters Local has moved for summary judgment with respect to Count III.

 The third count of the amended complaint alleges that the Teamsters violated Title VII, 42 U.S.C. § 2000e *et seq.*, in that the union did not treat his grievance similarly to those filed by white union members.[2] The primary defense advanced by the Union on Count III is that the complaint was not filed within 90 days after

---

1. Plaintiff also argues that even if O.R.C. § 2711.13 would normally apply, that statute requires written notice of the arbitration award to be sent to him. By way of affidavit (Doc. # 27, affidavit of Calvin Hudson, ¶ 16), he asserts that he only received *verbal* notice of the award, and thus concludes that the limitation period of § 2711.13 should not apply. Plaintiff's argument is not well taken. Section 2711.13 states that a suit to vacate an award must be brought "within three months after the award is delivered to the parties in interest . . . ." In effect, Plaintiff contends that *he* was a "party in interest" to the arbitration proceeding. There is, unfortunately, no Ohio case law interpreting the meaning of "party in interest." A logical interpretation, however, is that the phrase refers to the parties to the arbitration proceeding. Pursuant to the collective bargaining agreement (Doc. # 22, exh. A, p. 10) only

UPS and the Teamsters, not individual union members, were parties to grievance procedures such as the one herein. Hence, this Court holds that Plaintiff's failure to receive written notice of the award does not toll the running of the limitation period in § 2711.13. *Accord, Brain v. Roadway Express, Inc., supra*, slip op. at 11 (O.R.C. § 2711.13 applies to § 301 action even if plaintiffs never received written notice of the arbitration award, or if they were not entitled to the same, since only limitations period of statute is borrowed).

2. Title VII prohibits racial discrimination by employers and unions, and forbids unions from causing or attempting to cause an employer to discriminate along racial, sexual, ethnic, or religious lines. 42 U.S.C. § 2000e–2(a), (c).

receipt of the "right-to-sue" letter from the EEOC, as mandated by 42 U.S.C. § 2000e–5(f)(1). Plaintiff received the letter on September 8, 1980, and filed suit in this Court on December 8, 1980, which he concedes is some ninety-one days later. Defendant argues that the failure to file within the statutory maximum limit of ninety days deprives this Court of jurisdiction over the matter. Plaintiff, however, points out that under Fed.R.Civ.P. 6(a), which governs the computation of time prescribed by "any applicable statute," if the last day of a period falls on a Sunday, the period of time runs until the next day. December 7, 1980, was a Sunday, and the suit was filed the next day. This Court agrees with the Plaintiff that this procedure complied with the statute, as construed with Rule 6(a). Several courts have applied Rule 6(a) to similar Title VII situations. *See, e.g., Pearson v. Furnco Construction Co.*, 563 F.2d 815, 818–19 (7th Cir. 1977); *Jordan v. Lewis Grocer Co.*, 467 F.Supp. 113, 115 (N.D.Miss.1979). In so applying Rule 6(a), this Court rejects authority to the contrary, see, *Milam v. U.S. Postal Service*, 533 F.Supp. 28 (N.D.Ga. 1981), as unpersuasive, for reason that, properly construed, there is no conflict between § 2000e–5(f)(1) and Rule 6(a), and both may be applied together. *See also, Burnett v. Chickasaw Area Development Commission*, 662 F.2d 1210, 1213 (6th Cir. 1981) (Federal Rules of Civil Procedure apply to Title VII cases).

■ Since the complaint was timely filed, and the pleadings and affidavits raise genuine issues of material fact on the merits of the Plaintiff's Title VII claims against the Teamsters, the motion for summary judgment by the Teamsters must be, and is, overruled.

#### 4. Count IV: MOTIONS OVERRULED

Both Defendants have moved for summary judgment with respect to Count IV.

The fourth count of the amended complaint alleges that both Defendants violated 42 U.S.C. § 1981,[3] in that Plaintiff was not treated similarly to other employees in his discharge and grievance, "on account of his race."

■ Defendants argue that a complaint under § 1981 must plead intentional discrimination on the basis of race, and that Count IV does not meet this requirement. This Court agrees with the Defendants that discriminatory intent must be pled in a § 1981 action. Although definitive authority from the Sixth Circuit on this issue is lacking, see, *German v. Killeen*, 495 F.Supp. 822, 827 n.10 (E.D.Mich.1980), the clear trend in other Circuits, which this Court finds persuasive, is to require § 1981 plaintiffs to allege and to prove such intent. *See, Croker v. Boeing Co.*, 662 F.2d 975 (3rd Cir. 1981) (en banc); *Guardians Assoc. v. Civil Service Commissions*, 633 F.2d 232 (2d Cir. 1980); *Craig v. Los Angeles County*, 626 F.2d 659 (9th Cir. 1980), *cert. denied*, 450 U.S. 919, 101 S.Ct. 1364, 67 L.Ed.2d 345 (1981).

■ However, this Court cannot agree with the Defendants that Count IV of the amended complaint is inadequately pleaded. The count clearly states that the Defendants allegedly discriminated against Plaintiff "on account of his race." Construing this language most strongly in favor of the Plaintiff, the count sufficiently implies that the alleged discriminatory conduct was undertaken with racial intent.

■ Given the sufficiency of the complaint and the presence of genuine issues of material fact as shown by the affidavits and pleadings, the motions for summary judgment with respect to Count IV must be, and are, overruled.

#### 5. Count V: MOTIONS SUSTAINED IN PART AND OVERRULED IN PART

Both Defendants have moved for summary judgment with respect to Count V.

---

**3.** Section 1981 states, in pertinent part, that:
All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens ....
42 U.S.C. § 1981.

The fifth count of the amended complaint alleges that the Defendants conspired, during the JAC hearing, to deprive Plaintiff of his civil rights, because of his race, in that his grievance received disparate treatment. Such alleged acts are said to be violative of 42 U.S.C. § 1985(3). Defendants argue that whatever "right" Plaintiff allegedly may have been deprived of, it is not cognizable under § 1985(3). This Court partly agrees with the Defendants' position, as will be explained below.

By its terms, § 1985(3) declares unlawful any conspiracy of two or more persons to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws . . . ." Contrary to the assertions of the Defendant UPS, § 1985(3) has been interpreted to reach purely *private* conspiracies absent government action. *Griffin v. Breckenridge*, 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Taylor v. Brighton Corp.*, 616 F.2d 256, 264 (6th Cir. 1980).

The question here, however, is whether the alleged conspiracy deprived the Plaintiff of the "equal protection of the laws," or of "equal privileges and immunities under the laws" within the meaning of § 1985(3). *Great American Federal Savings & Loan Assoc. v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979); *Browder v. Tipton*, 630 F.2d 1149, 1151 (6th Cir. 1980). A recent decision by the Supreme Court suggests that the answer, at least in part, is in the negative. In *Novotny, supra*, the Court pointed out that § 1985(3) creates no substantive rights; it merely provides a *remedy* for violation of the rights which it designates. 442 U.S. at 372, 99 S.Ct. at 2349. The Court further held the rights created by Title VII did not fall under the protection of § 1985(3), since the complex procedural requirements for a Title VII claim would be impaired if it could be asserted within the remedial framework of § 1985(3). *Id.* at 378, 99 S.Ct. at 2352.

In the case herein, Plaintiff in Count V does not identify the "civil rights" he was allegedly deprived of. He is, pre-sumably, referring to his rights outlined in other averments in the complaint, that is, rights created by § 301 of the LMRA, Title VII, and § 1981. Certainly, Plaintiff's Title VII rights would not be cognizable under § 1985(3) after *Novotny*. Moreover, this Court holds that rights under § 301 may not be protected under § 1985(3). As the *Novotny* opinion pointed out with respect to Title VII, § 301 did not exist when § 1985(3) was enacted, and the need for swift and conclusive resolution of arbitration disputes under § 301, discussed earlier in this opinion, would be frustrated if a § 301 claim could be relitigated in the § 1985(3) remedial scheme. *See, Browder v. Tipton, supra*, 630 F.2d at 1151 n.3 (redress for alleged violation of employee's rights under the LMRA "must be sought by way of the labor act's administrative scheme," not through § 1985(3), citing *Novotny*).

The same result does not obtain for Plaintiff's § 1981 rights. It is true that the concurring opinions of Justices Powell and Stevens in *Novotny* argue that, based on the language and history of § 1985(3), only fundamental rights derived from the Constitution may fall under the protection of § 1985(3). 442 U.S. at 379, 99 S.Ct. at 2352 (Powell, J., concurring); *id.* at 385, 99 S.Ct. at 2355 (Stevens, J., concurring). Such an interpretation would also deprive Plaintiff of his § 1981 claim under Count V. However, this interpretation was not adopted by the *Novotny* majority, and in the absence of further guidance from the Supreme Court or the Sixth Circuit, *cf. Browder v. Tipton, supra*, this Court must hold that Plaintiff's rights created by § 1981 are cognizable under § 1985(3). The predecessor to § 1981 was enacted by Congress in the same era as the enactment of § 1985(3) and, unlike Title VII or § 301, § 1981 is not derived from a statutory scheme whose policies would be frustrated by the relitigation under another remedial statute.

Accordingly, the motions for summary judgment with respect to Count V are sustained in part, and overruled in part. Count V thus survives to the extent that it is premised on a right created by § 1981.

**6. Count VI: MOTION OVERRULED**

UPS has moved for summary judgment with respect to Count VI.

The final count of the amended complaint alleges that UPS violated Title VII, in that Plaintiff was terminated on account of his race, that he was subject to "harassment" due to his race since 1977, and that UPS discriminatorily applied its "grooming standards" based on race.

Title VII, as applicable to the facts herein, requires any charge to be filed with the EEOC "within three hundred days after the alleged unlawful practice occurred . . . ." 42 U.S.C. § 2000e–5(e).[4] Based on the statute, UPS argues that its liability (if any) should be limited to those acts occurring within 300 days before Plaintiff filed his charge with the EEOC on October 12, 1979, and requests a "preemptory ruling"[5] to that effect by this Court. Plaintiff argues that liability can be based on acts occurring before the 300 day period, since the complaint alleges a *continuing* "pattern and practice" of discriminatory acts by the UPS.

This Court essentially agrees with the Plaintiff's position. The mere allegation of a "continuing" pattern of discriminatory conduct in a complaint is insufficient. *United Air Lines v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). To constitute a pattern of conduct, a court must examine the acts alleged in the complaint to determine if the acts both during and previous to the 300 day period were "united into a continuous pattern." *Tarvesian v. Carr Division of TRW, Inc.*, 407 F.Supp. 336, 339 (D.Mass.1976). The mere fact that "residual effects" of the alleged past discrimination may be felt during the 300 day period is also insufficient to constitute a continuing pattern of conduct. *EEOC v. McCall Printing Corp.*, 633 F.2d 1232, 1236–37 (6th Cir. 1980).

Based on these principles, Plaintiff's complaint does sufficiently make out a "continuing" pattern of conduct so as to permit liability to be premised on acts occurring before the 300 day period. It must be recalled that the 300 day period ending on October 12, 1979 (the date of filing with the EEOC) began in late December of 1978. Plaintiff was still employed by UPS on the latter date, and his complaint alleges that "harassment" occurred during the time of employment, which period presumably includes the time between December of 1978 and his termination in May of 1979. Thus, a pattern of conduct—harassment—*is* alleged to have occurred both during and previous to the 300 day period. For these reasons, this Court cannot grant the "preemptory ruling" requested by UPS. Accordingly, the Court finds that Count VI sufficiently alleges a "continuing" pattern of conduct. In addition, the pleadings and affidavits indicate that genuine issues of material fact exist with respect to the allegedly discriminatory acts committed prior to, and during, the 300 day period before the filing of the complaint with the EEOC. Hence, Defendant's motion for summary judgment with respect to Count VI must be, and is, overruled.

### III. CONCLUSION

Accordingly, for the aforestated reasons, the motion for summary judgment by the Defendant Teamsters is sustained with respect to Count II of the amended complaint, sustained in part and overruled in part with respect to Count V, and overruled with respect to Counts III and IV. The motion for summary judgment by the Defendant UPS is sustained with respect to Count I, sustained in part and overruled in part with respect to Count V, and overruled with respect to Counts IV and VI.

---

**4.** Both Plaintiff and Defendants mistakenly assume that a charge must be filed within 180 days after the alleged unlawful practice occurred. Under 42 U.S.C. § 2000e–5(e), the applicable period is *300* days when a charge is filed, as herein, with the relevant state or local agency (the OCRC) and the EEOC. *See, Mohasco Corp. v. Silver*, 447 U.S. 807, 817, 100 S.Ct. 2486, 2492, 65 L.Ed.2d 532 (1980); *Hall v. Ledex, Inc.*, 669 F.2d 397 at 398 (6th Cir. 1982).

**5.** By the phrase "preemptory ruling," UPS presumably is moving for partial summary judgment, with respect to the acts upon which Plaintiff can predict liability.