John W. WITTEN, Individually and on behalf of all other persons similarly situated,

v.

A.H. SMITH AND COMPANY; A.H. Smith Sand and Gravel Company; Davis Sand and Gravel Corporation; A.H. Smith, Sr.; and A.H. Smith, Jr.

Civ. A. No. M–82–3198.

United States District Court, D. Maryland.

July 5, 1983.

William D. Patkus, Falls Church, Va., Frederic R. Kellogg, Washington, D.C., and Beverly Stone, Greenbelt, Md., for plaintiff.

Stephen D. Shawe, Bruce S. Harrison, J. Michael McGuire, and Shawe & Rosenthal, Baltimore, Md., for defendants.

## MEMORANDUM AND ORDER

JAMES R. MILLER, Jr., District Judge.

The plaintiff, John W. Witten, a black man, filed this putative class action alleging unlawful employment practices in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.,* 42 U.S.C. § 1981, and 42 U.S.C. § 1985(3).[1] The defendants have moved to dismiss the plaintiff's allegations under § 1985(3) and the alleged violations of the tort laws of the State of Maryland.[2] The plaintiff has responded.[3] After considering all the memoranda filed with regard to this motion, this court concludes that no hearing is necessary. Local Rule 6(E).

### I.

The defendants, by their counsel, have moved to dismiss the plaintiff's claim under § 1985(3) because, the defendants contend, neither Title VII nor § 1981 provides a substantive basis for which a remedy is available under § 1985(3). The contention that the § 1985(3) claim should be dismissed as a remedy based on a substantive right under Title VII is premised on the Supreme Court's ruling in *Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979), wherein the Court held that § 1985(3) could not provide a remedy for violations of the substantive rights provided under Title VII. The preclusion of § 1981 as a substantive basis for redress under § 1985(3) is urged by defendants as an extension of the *Novotny* holding in accordance with the concurring opinions in that case.

The plaintiff does not dispute that *Novotny* precludes a claim under § 1985(3) for Title VII violations, but states that § 1981 is a proper substantive basis for the remedy provided by § 1985(3).

Section (3) of § 1985 is the surviving version of § 2 of the Civil Rights Act of

---

1. Paper No. 1.

2. Paper No. 5, at 8–9. *See also* Paper No. 9.

3. Paper No. 7.

1871, commonly known as the Ku Klux Klan Act, which was enacted to enforce the Reconstruction Era laws and to provide a means of redress for persons deprived of their rights. *Scott v. Moore,* 680 F.2d 979, 986 (2d Cir.1982). *See also* Comment, *A Construction of Section 1985(c)[4] in Light of Its Original Purpose,* 46 U.Chi.L.Rev. 402, 411 (1979). The statute prohibits persons from conspiring to deprive other persons or a class of persons of "the equal protection of the laws, or of equal privileges and immunities under the laws," and provides a civil remedy for the victims of such actions.[5]

As originally enacted, § 2 of the Civil Rights Act of 1871 authorized both criminal and civil actions against those who con-spired to deprive others of their guaranteed rights. The Supreme Court, however, soon found the criminal provisions of the statute[6] unconstitutional, *United States v. Harris,* 106 U.S. 629, 1 S.Ct. 601, 27 L.Ed. 290 (1882); *Baldwin v. Franks,* 120 U.S. 678, 7 S.Ct. 656, 32 L.Ed. 766 (1886), and the invalidated provisions were later repealed by Congress. The civil remedy contained in § 2 remained but was seldom used.[7]

In 1971, the Supreme Court breathed new life into § 1985(3) when the Court unanimously concluded that the construction given that section twenty years earlier in *Collins v. Hardyman,* 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951), had been too narrow.[8] *Griffin v. Breckenridge,* 403 U.S. 88, 91

---

4. Although § 1985(3) was designated as such in the 1970 United States Code, it was codified in the 1976 edition of the United States Code as § 1985(c). The section was changed back to § 1985(3) in 1979. 42 U.S.C. § 1985(3) (Supp. III 1979).

5. Section 1985(3) provides as follows:

   (3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

6. The Criminal counterpart to § 1985(3) was codified and read as follows:

   "Sec. 5519. If two or more persons in any state or territory conspire, or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any state or territory from giving or securing to all persons within such state or territory the equal protection of the laws; each of such persons shall be punished by a fine of not less than five hundred nor more than five thousand dollars, or by imprisonment, with or without hard labor, not less than six months nor more than six years, or by both such fine and imprisonment."

   Revised Statutes, Act of April 20, 1871, ch. 22 § 2, 17 Stat. 13, repealed Act of March 4, 1909, ch. 15, 35 Stat. 1153.

7. "From the date of enactment until 1920, no reported cases arose under section 1985(3). Comment, *The Civil Rights Act; Emergence of an Adequate Federal Civil Remedy?,* 26 Ind.L.J. 361, 363 (1951). *See generally* Note, *State Action is a Requirement for the Application of Section 1985(3) to First Amendment Rights,* 54 N.C.L.Rev. 677 (1976)."
   Note, *The Scope of Section 1985(3) Since Griffin v. Breckenridge,* 45 Geo.W.L.Rev. 239, 240 n. 4 (1977).

8. The statute was then codified at 8 U.S.C. § 47(3) (1946 ed.).

S.Ct. 1790, 29 L.Ed.2d 338 (1971).[9] In *Collins,* the Court had concluded that the conspiracy alleged in the respondent's complaint, making no claim of state involvement, was not within "the narrow class of conspiracies defined by this statute," *Collins,* 341 U.S. at 662, 71 S.Ct. at 942, but made it clear that the construction then accorded the statute was influenced by potential constitutional problems. *Id.* at 659, 71 S.Ct. at 940.

In *Griffin,* the petitioners filed an action under § 1985(3) alleging that a group of whites had conspired to assault the petitioners, three blacks. The district court, relying on *Collins,* dismissed the suit because of the lack of state action. The Fifth Circuit affirmed but questioned the continuing viability of *Collins.* Certiorari was granted. The Supreme Court, with the benefit of twenty years of evolution in the law, decided that the constitutional problems perceived by the *Collins* Court, "simply do not exist." *Griffin,* 403 U.S. at 96, 91 S.Ct. at 1795. While the Court noted that the language of § 1985(3) was similar to the terms of the Fourteenth Amendment, which does contain a requirement of state action, it concluded that there was nothing inherent in the language of the statute to require a similar limitation on § 1985(3). According § 1985(3) the same broad sweep as other closely related statutes, the Court stated that § 1985(3) also proscribed private conspiracies to deprive persons of their rights.

Justice Stewart, writing for the majority, was careful to point out that the holding that the statute was meant to reach private action did not "mean that it [1985(3)] was intended to apply to all tortious, conspiratorial interferences with the rights of others." *Griffin,* 403 U.S. at 101–02, 91 S.Ct. at 1797–98. To avoid the implementation of a general federal tort law, the Court required, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors in the Forty-Second Congress of the limiting amendment.[10] *Id.* at 102, 91 S.Ct. at 1798.[11] Declining to trace the constitutionally permissible periphery of the sources of rights for redress under § 1985(3),[12] the Court concluded that, in the *Griffin* case, the source of the congressional power to reach the private conspiracy was found in the Thirteenth Amendment and the constitutionally protected right of interstate travel.

After *Griffin,* the courts approached the scope of redress available under § 1985(3) differently. Some considered only rights derived from the Constitution in determining whether § 1985(3) was violated. *See, e.g., Dombrowski v. Dowling,* 459 F.2d 190, 195 (7th Cir.1974); *Silkwood v. Kerr-McGee Corp.,* 460 F.Supp. 399, 407–11 (W.D.Okl. 1978). Other courts stated that § 1985(3) protects not only Constitutional rights but federal statutory rights as well. *See, e.g., Life Ins. Co. of North Am. v. Reichardt,* 591

---

**9.** At least two other earlier cases before the Court had involved causes of actions based upon what is now § 1985(3), but neither decision examined the conspiracy claim. *See Snowden v. Hughes,* 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944); *Hague v. CIO,* 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (1939).

**10.** The elements of a cause of action under § 1985(3) were identified as follows:

"(1) 'conspire or go in disguise on the highway or on the premises of another' (2) 'for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws. It must then assert that one or more of the conspirators (3) did, or caused to be done, 'any act in furtherance of the object of [the]

conspiracy,' whereby another was (4a) 'injured in his person or property' or (4b) 'deprived of having and exercising any right or privilege of a citizen of the United States.'" *Griffin v. Breckenridge,* 403 U.S. at 102–03, 91 S.Ct. at 1798–99.

**11.** "The constitutional shoals that would lie in the path of interpreting § 1985(3) as a general federal tort law can be avoided by giving full effect to the congressional purpose—by requiring, as an element of the cause of action, the kind of invidiously discriminatory motivation stressed by the sponsors of the limiting amendment."

*Id.* at 102, 91 S.Ct. at 1798.

**12.** *Id.* at 107, 91 S.Ct. at 1801.

F.2d 499 (9th Cir.1979); *Doski v. M. Gold-seker Co.,* 539 F.2d 1326, 1333 (4th Cir. 1976); [13] *Means v. Wilson,* 522 F.2d 833, 839 (8th Cir.1975); *Hodgin v. Jefferson,* 447 F.Supp. 804, 808 (D.Md.1978) (violations of the Equal Pay Act, 29 U.S.C. § 206 a proper basis for a § 1985(3) claim).[14]

In *Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957, the Supreme Court once again had occasion to examine the scope of § 1985(3). The plaintiff in *Novotny* asserted that his support of his fellow female employees resulted in his not being re-elected to the board of directors and his being fired. After receiving a right to sue letter from the Equal Employment Opportunity Commission, the plaintiff filed suit alleging violations of § 1985(3) and Title VII. The Third Circuit permitted both claims to proceed and the Supreme Court granted certiorari. *Novotny,* 439 U.S. 1066, 99 S.Ct. 830, 59 L.Ed.2d 30 (1979).

The Court began by noting that § 1985(3) does not provide a substantive right of its own. It provides a remedy for violations only of those substantive rights found elsewhere.[15] The question presented the Court was "whether a person injured by a conspiracy to violate § 704(a) of Title VII of the Civil Rights Act of 1964 is deprived the 'equal protection of the laws, or of equal privileges and immunities under the laws' within the meaning of § 1985(3)." *Novotny,* 442 U.S. at 372, 99 S.Ct. at 2349. After

reviewing the carefully conceived and comprehensive plan enacted by Congress in Title VII, the Court concluded that to permit a separate claim under § 1985(3) would damage the effectiveness of Title VII, and, therefore, Title VII could not be the basis for a cause of action under § 1985(3).

Both the concurring and dissenting opinions noted that the holding in *Novotny* was an extremely narrow one, confined to the facts of the case, and providing little future guidance to the lower courts. *Novotny,* 442 U.S. at 378–79, 385, 388–89 n. 5, 99 S.Ct. at 2352–53, 2355, 2357–58 n. 5. In concurrence, Justice Powell relied on the factual circumstances in *Griffin* and concluded that the reach of § 1985(3) was limited to conspiracies to violate "those fundamental rights of the Constitution." *Id.* at 379, 99 S.Ct. at 2352. Justice Stevens, in his concurring opinion, reviewed the legislative history of §§ 1 & 2 of the Civil Rights Act of 1871 and argued that § 1985(3) does not provide "a remedy for the violation of statutory rights—let alone rights created by statutes that had not yet been enacted." *Id.* at 385, 99 S.Ct. at 2355. In contrast, the dissent authored by Justice White, joined by Justices Brennan and Marshall, thought it "clear that § 1985(3) encompasses all rights guaranteed in federal statutes as well as rights guaranteed directly by the Constitution." *Id.* at 388–89 n. 5, 99 S.Ct. at 2357–58 n. 5.

---

**13.** "The statute, as explicated by the Supreme Court above, requires that the purpose of the conspiracy be to deprive plaintiffs of 'the equal protection' of the *laws,* or of equal *privileges and immunities under the laws.'* We read this language to cover rights guaranteed by *federal law or the Constitution.*"
*Doski,* 539 F.2d at 1333 (footnote omitted, emphasis in the original).

**14.** *See* cases cited in 46 U.Chi.L.Rev. at 428–29 n. 135; *Recent Development,* 65 Cornell L.Rev. 114, 118 n. 23 (1979); Note, *Private Conspiracies to Violate Civil Rights: The Scope of Section 1985(3) After Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 61 B.U.L.Rev. 1007, 1030 & nn. 164–66 (1981).

**15.** The dissent in *Novotny* and subsequent commentators have criticized this aspect of the

holding. *See Novotny,* 442 U.S. at 388–91, 99 S.Ct. at 2357–59 ("Because § 1985(3) provides a remedy for *any person* injured as a result of deprivation of a substantive right, it must be seen as itself creating rights in persons other than those to whom the underlying federal right extends."); T. Banks, *The Scope of Section 1985(3) in Light of Great Am. Fed. Sav. & Loan Ass'n v. Novotny; Too Little Too Late?,* 9 Hastings Const.L.Q. 579, 585–89 (1981) (Congress intended an independent substantive remedy for those victims of conspiracies because state civil conspiracy actions did not exist at the time the Act was passed); 61 B.U.L.Rev. at 1020 (§ 1985(3) is substantive because it reaches an activity—conspiracy—not covered by other statutes or constitutional provisions).

Notwithstanding the extensive examination of § · 1985(3) in *Griffin* and the nature of the question framed by the Court in *Novotny,* the precise nature of the rights protected by Section 3 remains undefined.[16] In its aftermath, *Novotny* has indeed provided little guidance. Courts and commentators alike conclude that the *Novotny* holding was premised on a concern for the integrity of Title VII's administration, and not on an examination of the definition of Section 3's "equal protection of the laws, or of equal privileges and immunities under the laws." *See, e.g., Scott,* 680 F.2d 979; Note, *Private Conspiracies to Violate Civil Rights: The Scope of Section 1985(3) After Great Am. Fed. Sav. & Loan Ass'n v. Novotny,* 61 Boston U.L.Rev. 1007 (1981); *Recent Development,* 65 Cornell L.Rev. 114 (1979).[17]

## II.

Section 3 of § 1985 provides a remedy for any injury from a conspiracy to deprive persons of the "equal protection of the laws, and the equal privileges and immunities under the laws." By its terms, the statute does not limit the scope of its redress to Constitutional violations.[18] On its face, section 3 remedies all deprivations of the equal protection of the laws, whatever their source. *Griffin,* 403 U.S. at 97, 91 S.Ct. at 1795–96.[19] Neither does the legislative history reveal any intent to limit § 1985 redress to violations of fundamental Constitutional rights.[20]

During the Reconstruction Era, confronted with an increase in the violent activities of the Ku Klux Klan, members of the Forty-Second Congress established a joint committee to investigate the Klan. In its report, the committee concluded that the ultimate goal of the Klan was "the overthrow of these reconstruction laws and the people and State governments they were designed to protect." Cong. Globe, 42d Cong., 1st Sess. 517, col. 2 (1871) (remarks of Con-

---

**16.** Subsequent to the Supreme Court decision in *Novotny,* few courts have addressed the issue of the scope of § 1985(3). Most attention has been directed to that area of inquiry created by the *Griffin* Court, identifying those classes for which § 1985(3) provides a remedy. *See, e.g., Scott,* 680 F.2d 979, 991–96 (non-union employees are a cognizable class); *Ward v. Connor,* 657 F.2d 45 (4th Cir.1981), *cert. denied,* 455 U.S. 907, 102 S.Ct. 1253, 71 L.Ed.2d 445 (1982) (members of Unification Church are a class); *Life Ins. Co. of North Am. v. Reichardt,* 591 F.2d 499 (9th Cir.1979) (women are a protected class); *Keating v. Carey,* 706 F.2d 377 (2d Cir.1983) (Republicans a protected class).

Few courts have been confronted with the question of whether § 1985(3) provides a remedy for federal statutory rights. One case has been found in which § 1981 was permitted as a basis for a § 1985(3) claim, but without discussion. *See Hudson v. Teamsters Local No. 957,* 536 F.Supp. 1138 (N.D.Ohio 1983).

**17.** A position examined in a concurring or dissenting opinion does not resolve the issue. *People by Abrams v. Cornwell Co.,* 695 F.2d 34, 43 n. 4 (2d Cir.1982). *See also* T. Banks, *The Scope of Section 1985(3) in Light of Great American Federal Savings and Loan Association v. Novotny: Too Little Too Late?,* 9 Hastings Const.L.Q. 579 (1981); *Private Conspiracies,* 61 Boston U.L.Rev. 1007 (1981).

**18.** *Cf. Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) ("and laws" in § 1983 "means what it says").

**19.** The Court in *Griffin* was referring to whether the conspiracies prohibited by § 1985(3) were limited to those involving state action and that limitation was rejected. The same conclusion, that § 1985(3) remedies all deprivations, is appropriate where the question is what deprivations caused by conspiracy was § 1985(3) intended to remedy.

**20.** "We are mindful that in interpreting a statute, we must not be guided by a single sentence, but rather must look to the provisions of the whole law, ascertain legislative intent, and give effect to that intent. *Philbrook v. Glodgett,* 421 U.S. 707, 713 [95 S.Ct. 1893, 1898, 44 L.Ed.2d 525] (1975). A statute must be interpreted to give it the single, most harmonious, comprehensive meaning possible in light of the legislative policy and purpose. *Weinberger v. Hynson, Westcott & Dunning,* 412 U.S. 609, 631–32 [93 S.Ct. 2469, 2484, 37 L.Ed.2d 207] (1973)."
*Food Town Stores, Inc. v. EEOC,* 708 F.2d 920 (4th Cir.1983).

gressman Shellabarger).[21] *See also* 46 U.Chi.L.Rev., at 407–11. To counteract the threat posed by the Klan and other counter-Reconstruction organizations, Congressman Shellabarger introduced into the House what eventually became known as the Civil Rights Act of 1871.[22]

As originally introduced, Section 2 of H.R. 320 provided for penalty wherever a conspiracy deprived any person of rights held "under the Constitution or laws of the United States." As Congressman Shellabarger explained:

> "the whole design and scope of the second section of this bill was to do this: to provide for the punishment of any combination or conspiracy to deprive a citizen of the United States of *such rights and*

immunities *as he has by virtue of the laws of the United States and of the Constitution thereof.*"

Cong. Globe, at 382, col. 3 (emphasis added). The debates which followed the bill's introduction reveal the continuing clash between the Republicans and the Democrats, with the southern Democrats seeking to shield their states from another Reconstruction Era law by charging an unconstitutional extension of power,[23] the institution of a federal criminal code,[24] and declaring the ability of local communities to combat the violent outbursts.[25]

On April 5, 1871, an amendment to the original bill was offered and accepted by the House.[26] It was this amendment which deleted the original language, which specifi-

---

**21.** *See also* Cong. Globe, app. 195, col. 1 (remarks of Congressman Buckley); *id.* app. 201, col. 2 (remarks of Congressman Snyder); *id.* 421, col. 1 (remarks of Congressman Winchester); *id.* 319–22 (remarks of Congressman Stoughton).

**22.** H.R. 320, 42d Cong., 1st Sess. (1871).

**23.** Cong. Globe, app. at 165–66 (remarks of Congressman Williams) (Congressman Williams noting that every Reconstruction law sought to be passed by the Congress had been met with charges by the Democrats of unconstitutionality).

**24.** *Id.* at 394–97 (remarks of Congressman Rainey).

**25.** *See, e.g., id.* at 346–48 (remarks of Congressman Davis).

**26.** The amendment to § 2 of H.R. 320 reads as follows:

> "Sec. 2. *That if two or more persons within any State or Territory of the United States shall conspire together* to overthrow, or to put down, or to destroy by force the Government of the United States, or to levy war against the United States, or to oppose by force the authority of the Government of the United States, or by force, intimidation, or threat to prevent, hinder, or delay the execution of any law of the United States, or by force to seize, take, or possess any property of the United States against the will and contrary to the authority of the United States, or by force, intimidation, or threat to prevent any person from accepting or holding any office of trust or place of confidence

> under the United States, or from discharging the duties thereof, or by force, intimidation, or threat to induce any officer of the United States to leave any State, district, or place where his duties as such officer might lawfully be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or by force, intimidation, or threat to deter any witness in any court of the United States from testifying in any matter pending in such court fully, freely, and truthfully, or to injure any such witness in his person or property on account of his having so testified, or by force, intimidation, or threat to influence the verdict of any juror in any court of the United States, or to injure such person in his person or property on account of any verdict lawfully assented to by him, *or shall conspire together for the purpose, either directly or indirectly, of depriving any person or any class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws, or for the purpose of preventing or hindering the constituted authorities of any State from giving or securing to all persons within such State the equal protection of the laws,* or to injure any person in his person or his property for lawfully enforcing the right of any person or class of persons to the equal protection of the laws, each and every person so offending shall be deemed guilty of a high crime, and, upon conviction thereof in any district or circuit court of the United States, or district or supreme court of any Territory of the United States having jurisdiction of similar offenses, shall be punished by a fine not less than $500 nor more than $5,000, or by imprisonment, with or without hard labor, as the court may deter-

cally identified the rights of the citizen which were protected to be those arising under the Constitution and the laws of the United States, and substituted the language still in use today, the equal protection of the laws and the equal privileges and immunities under the laws.

The author of this limiting amendment, Congressman Willard of Vermont, did not view the power of Congress as limited to remedying the fundamental rights contained in the Constitution. To the contrary, while he believed that the jurisdiction of the federal government was limited, it was his position that an individual turned to the State government for all purposes, "except

for the purpose of carrying into effect the Constitution of the United States *and the laws made in pursuance thereof.*" Cong. Globe, app. at 187, col. 3 (remarks of Congressman Willard) (emphasis added). The responsibility of assuring the protection of an individual's rights arising from the Constitution or federal law belongs to the federal government and was so recognized at the time of the debates leading to enactment of what is now § 1985(3).[27]

The Supreme Court, after reviewing these remarks and the remarks of Congressman Shellabarger,[28] concluded that the amendment to section 2 was intended to insert a requirement of "some racial, or

mine, for a period of not less than six months nor more than six years, as the court may determine, or by both such fine and imprisonment as the court shall determine; and if any one or more persons engaged in such conspiracy, such as is defined in the preceding section, shall do or cause to be done any act in furtherance of the object of such conspiracy, whereby any person shall be injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the person so injured or deprived of such rights and privileges may have and maintain an action for the recovery of damages occasioned by such injury or deprivation of rights and privilege against any one or more of the persons engaged in such conspiracy, such action to be prosecuted in the proper district or circuit court of the United States, with and subject to the same rights of appeal, review upon error, and other remedies provided in like cases in such courts under the provisions of the act of April 9, 1866, entitled "An act to protect all persons in the United States in their civil rights, and to furnish the means for their vindication."
Cong. Globe at 477 col. 3.

**27.** To the extent the amendment limited the enforcement of § 1985(3) remedies, it was meant only to dissuade fears of federal enforcement of state law. The constitutional reservations raised by members of Congress during the debates centered upon the power of Congress to redress injuries caused by two or more persons conspiring to deprive an individual of rights accorded an individual under state law. These concerns were voiced as a response to the original bill which identified the acts of "murder, manslaughter, mayhem, robbery, assault and battery, perjury, subordination of perjury, criminal obstruction of legal process or resistance of officers in discharge of official

duty, arson or larceny," as subject to federal redress. Cong. Globe, at 317 col. 1. Congressman Rainey, while recognizing that the Congress had the power to restrain the "violation of rights, privileges or immunities of the citizen, to which he is entitled under the Constitution and laws of the United States," concluded that the language of H.R. 320 did not limit its redress to the situations in which the federal government had jurisdiction. Rather the bill, as originally introduced, permitted "the Federal Government to intervene in the internal affairs and police regulations of the States and to suspend the exercise of their lawful authority." *Id.* at 395–96.

These same concerns caused Congressman Willard to offer the accepted amendment. *Id.* app. at 188, cols. 1 & 2. The legislative record, however, is devoid of any concern by Congress to limit the redress of individuals for violations of rights held under the Constitution or pursuant to federal law. In fact, the sponsor of the amendment viewed the rights of citizens of the United States as encompassing a wide range of rights, and clearly supported their enforcement under this section of the bill. *See also id.* app. at 218–19 (remarks of Senator Thurman) (the "equal protection of the laws" language gives the Federal Government the power to punish violations of federal law); *id.* at 568 (remarks of Senator Edmunds) ("The second section . . . only provides for the punishment of a conspiracy . . . only a conspiracy to deprive citizens of the United States . . . of the rights which the Constitution and the laws of the United States made pursuant to it give to them.").

**28.** In analyzing the amendment to section 2, Congressman Shellabarger stated the purpose of the amendment was:

"the prevention of deprivations which shall attack the equality of rights of American citizens; that any violation of the right, the *animus* and effect of which is to strike down

perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action" in a § 1985(3) cause of action. No limitation on the basis of the rights for which a petitioner seeks relief under § 1985(3) was identified as arising from this amendment, although the statute was examined closely by the Court.

Thus, the legislative history reveals that, while section 2 of the Civil Rights Act of 1871 was amended so as to delete the specific identification of those rights deserving of federal protection when endangered by conspiracy, that amendment did not change the original intent of the Forty-Second Congress which existed when the legislation was introduced. Advocates and detractors alike recognized the power of the Federal Government under the 1871 Act to remedy violation of rights secured to United States citizens under the Constitution or federal law. The successor to Section 2 of the Civil Rights Act of 1871, § 1985(3), therefore, provides for the protection of rights of citizens secured to them under the Constitution and in the laws passed by Congress pursuant to the authority of the Constitution.

In addition to the general legislative history discussed above, the record relating to other contemporaneous legislation reveals that the substantive basis alleged in this case, 42 U.S.C. § 1981, is specifically within the area of protection intended by the Forty-Second Congress. The purpose in seeking the passage of the 1871 Act was the enforcement of the Reconstruction Era laws, *Scott*, 680 F.2d 979, and use of the rights secured by § 1981 as a substantive

basis for redress under § 1985(3) fulfills the purpose of the 1871 Act as originally defined and as eventually enacted.

On December 18, 1865, the Secretary of State officially certified the ratification of the Thirteenth Amendment. The next day, Senator Trumbull rose to declare his purpose to introduce a sweeping bill to assure the rights recognized in the Thirteenth Amendment, and on January 5, 1866, he introduced the bill which later became the Civil Rights Act of 1866.[29] The bill affirmatively secured for all men the "great fundamental rights":

> "the right to acquire property, the right to go and come at pleasure, the right to enforce rights in the courts, to make contracts, and to inherit and dispose of property."

Cong. Globe, 39th Cong., 1st Sess., 43 (1866) (remarks of Senator Trumbull). Section 1 of the Civil Rights Act of 1866 contained 42 U.S.C. § 1981 in its original form. *See Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 422 n. 28, 88 S.Ct. 2186, 2194 n. 28, 20 L.Ed.2d 1189 (1968).[30]

It was not only the purpose of the Forty-Second Congress to enforce the Reconstruction Era laws but the result they achieved as well. Congressman Willard, speaking specifically of the rights of American citizens which the amended section 2 of the Civil Rights Act of 1871 secured, identified the protected rights as those described by the Civil Rights Bill, passed in 1866, which provided in part:

> "That all persons born in the United States ... shall have the same right ...

---

the citizen, to the end that he may not enjoy equality of rights as contrasted with his and other citizens' rights, shall be within the scope of the remedies of this section."
Cong. Globe, at 478, col. 2.

**29.** For a detailed examination of the legislative history of 42 U.S.C. §§ 1981 & 1982, *see Jones v. Alfred H. Mayer Co.,* 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1968). *See also Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

**30.** Sections 1 & 2 of the Civil Rights Act of 1866, the predecessors to §§ 1981 & 1982, were

enacted pursuant to the Enabling Clause of the Thirteenth Amendment authorizing Congress "to pass all laws necessary and proper for abolishing all badges and incidents of slavery in the United States." Civil Rights Cases, 109 U.S. 3, 20 (1883). There is no doubt but that such legislation as was found in the Civil Rights Act of 1866 was contemplated by the Congress which passed the Thirteenth Amendment. *Jones,* 392 U.S. at 439–40, 88 S.Ct. at 2203.

to make and enforce contracts, to sue, be parties and give evidence, to inherit, purchase, lease, sell, hold, and convey real and personal property, and to full and equal benefit of all laws and proceedings for the security of person and property." Cong. Globe, 42d Cong., 1st Sess., app. 189, col. 1 (1871).[31]

The Civil Rights Act of 1871 was enacted to enforce the Reconstruction Era laws, among them the Civil Rights Act of 1866. Today the Forty-Second Congress would clearly approve the use of § 1985(3), as the successor to the 1871 Act, to remedy deprivations of those rights whose basis is found in § 1981, successor to the 1866 Act. Moreover, the Supreme Court, in *Griffin,* 403 U.S. at 105, 99 S.Ct. at 1799, recognized § 1985(3) was properly intended as providing a remedy for the deprivation of "those basic rights that the law secured to all free men" under the Thirteenth Amendment. Since the rights embodied in § 1981 were seen as basic to the drafters of the Reconstruction Era civil rights legislation, the conclusion reached by the *Griffin* Court requires the deduction that § 1981, dealing as it does with rights secured to persons under the Thirteenth and Fourteenth Amendments, *McDonald v. Santa Fe Trail Transport Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976), is a permissible basis for a § 1985(3) cause of action.

■ Thus, after having reviewed the clear language of the statute itself, the general legislative history with regard to the rights for which a remedy is provided by § 1985(3), and the intent of the Forty-Second Congress with regard to the substantive basis asserted by the plaintiff in this particular case, this court concludes

that 42 U.S.C. § 1981 is a proper substantive basis for a claim of redress under § 1985(3).

### III.

The defendants also contend that the plaintiff's state claims should be dismissed because no specific tort is alleged.[32] In his opposition to the Motion to Dismiss, the plaintiff asserts two state claims. In reply, the defendants assert that the claims are not contained in the complaint and should not be considered by the court. In the exercise of caution, however, defendants have substantively attacked the two claims which are raised in the plaintiff's discussion.

■ The complaint should, as a minimum, indicate the state claims on which pendent jurisdiction is sought. Merely stating that the facts alleged in the complaint give rise to actionable torts in the State of Maryland, unfairly imposes upon the defendants the responsibility and burden of guessing which torts the plaintiff is alleging. Although the plaintiff has alleged two state claims in his opposition, this court concludes that the proper course to pursue is to instruct the plaintiff to amend his complaint to set forth those state tort claims which he is alleging and the facts in support of same. *See* 2A *Moore's Federal Practice* ¶ 12.14, at 2335 (2d ed. 1948). The court may then determine whether the pendent state claims asserted by the plaintiff state a cause of action.[33]

For the reasons set forth above, it is this 5th day of July, 1983, by the United States District Court for the District of Maryland, ORDERED:

---

**31.** *See also* Cong. Globe, app. at 68 & 150 (remarks of Congressman Shellabarger and Congressman Garfield) (both congressmen recognized the use of § 2 of the Civil Rights Act of 1871 to remedy the wrongs which the Thirteenth Amendment was meant to rectify).

**32.** In Section VIII of the plaintiff's complaint, he alleges, after incorporating the allegations of the previous paragraph, that "[s]uch actions

constitute actionable torts in the State of Maryland, hence this Court has pendent jurisdiction of this claim." Paper No. 1, ¶ 16.

**33.** If the state claims which the plaintiff asserts in his opposition brief are not contained in the complaint, then any opinion by this court as to their sufficiency would merely be advisory.

1. That the Motion to Dismiss Plaintiff's Claims under 42 U.S.C. § 1985(3) be, and the same is, hereby DENIED.

2. That the plaintiff is granted leave to amend his complaint within fifteen (15) days of the date of this Memorandum and Order to allege those state tort claims for which he seeks pendent jurisdiction.

3. That the Clerk mail a copy of this Memorandum and Order to counsel for all parties.