NATIONAL CONSERVATIVE POLITI-
CAL ACTION COMMITTEE
(NCPAC), et al., Plaintiffs,

v.

Senator Edward M. KENNEDY, et
al., Defendants.

Civ. A. No. 81-3061.

United States District Court,
District of Columbia.

May 6, 1983.

Robert R. Sparks, Jr., Sedam & Herge,
McLean, Va., for plaintiffs.

William C. Oldaker, Washington, D.C.,
for defendant Senator Edward M. Kennedy.

M. David Vaughn, Skadden, Arps, Slate,
Meagher & Flom, Washington, D.C., for
defendant Senator Daniel P. Moynihan.

Stanley C. Morris, Jr., Steptoe & Johnson,
Washington, D.C., for defendant Senator
Robert C. Byrd.

William A. Gould, Perkins, Coie, Stone,
Olsen & Williams, Washington, D.C., for

defendants Senator Wendell H. Ford, Senator Thomas F. Eagleton, Senator John Melcher, Edward Quick and Democratic Senatorial Campaign Committee.

Clifton Peter Rose, Williams & Jensen, P.C., Washington, D.C., for defendant Congressman James C. Wright, Jr.

Christopher R. O'Neill, Jr., O'Neill & Haase, P.C., Washington, D.C., for defendants Congressman Tony Coelho and Democratic Congressional Campaign Committee.

Alan C. Campbell, Dow, Lohnes & Albertson, Washington, D.C., for defendants Guy Gannett Broadcasting Services, Guy Gannett Pub. Co. and The WHYN Stations Corp.

Martin E. Firestone, Sanford, Adams, McCullough & Beard, Washington, D.C., for defendant Springfield Television Corp.

Timothy B. Dyk, Wilmer, Cutler & Pickering, Washington, D.C., for defendant CBS, Inc.

Howard Monderer, Washington, D.C., for defendant NBC, Inc.

William H. Schweitzer, Baker & Hostetler, Washington, D.C., for defendant Garryowen Corp.

George R. Clark, Pierson, Ball & Dowd, Washington, D.C., for defendant Gaylord Broadcasting Co.

Arthur B. Goodkind, Koteen & Naftalin, Washington, D.C., for defendants Lin Broadcasting Corp. and North Texas Broadcasting Corp.

David R. Anderson, Wilmer, Cutler & Pickering, Washington, D.C., for defendants The Times Mirror Co. and KDFW–TV, Inc.

John E. Fiorini, III, Pepper & Corazzini, Washington, D.C., for defendants Rollins, Inc. and Rollins Broadcasting of Delaware, Inc.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

In this action, plaintiffs, the National Conservative Political Action Committee (NCPAC), NCPAC chairman John T. Dolan, and NCPAC contributor James Ware, allege a conspiracy among a number of television and radio stations and various Democratic Members of Congress, campaign committees, and party officials to prevent the broadcast of NCPAC's advertisements critical of the voting records of the Members of Congress. Plaintiffs charge that this alleged conspiracy has infringed their right to freedom of speech and expression under the first amendment to the Constitution and their right to equal protection of the laws under the fifth amendment. Plaintiffs also allege a violation of 42 U.S.C. § 1985(3), in that defendants purportedly have conspired to interfere with their civil rights concerning equal protection and voting-related advocacy. Each of the defendant television and radio stations (more precisely, the various owners and licensees of the broadcast stations, hereinafter referred to as "broadcaster defendants") have moved to dismiss the complaint on grounds including lack of personal jurisdiction, improper venue, exclusively of jurisdiction in the Federal Communications Commission, or failure to state a claim upon which relief may be granted. Each of the political defendants has moved to dismiss on some of the same grounds and on some grounds not asserted by the broadcasters. The political defendants (so identified here for want of a better word) include six United States Senators affiliated with the Democratic Party, two Democratic United States Representatives, the Democratic Congressional Campaign Committee, and the Democratic Senatorial Campaign Committee, and a member of the latter committee. One Senator and one Representative are sued in their capacities as chairman of each respective committee. For the reasons which follow, the Court holds that the complaint fails to state a claim upon which relief may be granted and accordingly dismisses the cause in its entirety.[1]

---

1. Accordingly, the Court does not address the numerous motions filed by various and separate broadcaster defendants to dismiss for lack of personal jurisdiction or improper venue.

In count I of their complaint, plaintiffs assert that the political defendants other than the committees and the individuals sued in their capacities as members of the committees "violated plaintiffs' rights to freedom of speech and expression and to equal protection of the laws by influencing [defendant broadcast stations] to refuse NCPAC's advertisements, and thereby preventing those stations from making independent judgments concerning the broadcast of such advertisements without interference and intimidation by a federal official." In count II, plaintiffs charge that defendants have violated 42 U.S.C. § 1985(3) by conspiring with each other "for the purpose of depriving plaintiffs of their rights to freedom of speech and expression and to equal protection of the laws, including their right to speak out in a legal manner and be heard concerning the conduct in office of various federal incumbent officeholders and concerning the election of incumbents and candidates to the U.S. Senate and House of Representatives." In addition to declaratory and injunctive relief, plaintiffs seek $5,000,000 in compensatory and punitive damages.

NCPAC, according to the complaint, is a "voter education" organization which occasionally sponsors advertisements that are critical of the voting records or candidacy of particular incumbents of or candidates for federal office. In 1981 NCPAC attempted to purchase from the broadcaster defendants air time for advertisements critical of several of the political defendants. The advertisements were to be broadcast locally (i.e., not over a network) into the states or districts represented by these defendants in Congress. All of the broadcaster defendants refused to air the NCPAC advertisements. Each of these local broadcasters, plaintiffs assert, consulted with or were consulted by the particular defendant Senator or Representative serving the relevant jurisdiction (or his agents) concerning the advertisements. Each Member of Congress allegedly advised the particular broadcaster not to accept NCPAC's advertisements concerning him. Thereafter each broadcaster informed NCPAC that it would

not air the advertisements. Plaintiffs assert that the defendant committees and members thereof had advised incumbents and candidates concerning strategy and tactics for opposing NCPAC and its activities, including the advertising in question in this case. Plaintiffs also assert that the defendant committees and members provided incumbents and candidates with written materials for distribution to broadcasters designed to prompt the broadcasters to reject NCPAC's advertisements.

NCPAC presented the same allegations to the Federal Communications Commission on September 22, 1981, some three months before it filed the instant suit. The FCC's Broadcast Bureau ruled on November 20, 1981 that NCPAC's charges were meritless, and not only rejected NCPAC's argument that it and other similarly-situated independent political committees should have a "reasonable right of access" to the airwaves but also held that, with certain exceptions provided for by statute (and inapplicable to NCPAC's case), each broadcaster is free to carry or reject any program it chooses. *J. Curtis Herge, Esq. (NCPAC)*, 88 F.C.C.2d 626 (Broadcast Bureau 1981). The Broadcast Bureau did not address NCPAC's allegations of intimidation on the ground that those were outside its jurisdiction. *Id.* NCPAC filed a second complaint with the Broadcast Bureau on December 8, 1981 challenging the refusal of certain broadcasters (some of which were to become defendants in the instant lawsuit) to broadcast NCPAC advertisements of the type at issue in this action. Noting that this second complaint was essentially identical to the first, the Broadcast Bureau denied it as well, on December 18, 1981. *J. Curtis Herge, Esq. (NCPAC)*, (Broadcast Bureau, Dec. 18, 1981). NCPAC appealed those decisions to the full FCC on January 18, 1982, and the Commission denied that appeal on April 6, 1982, noting, *inter alia*, that under the rule of *Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973) [hereinafter cited as *CBS v. DNC*], there is no private right of access to broadcast sta-

tions. *J. Curtis Herge, Esq. (NCPAC),* 89 F.C.C.2d 626 (1982). This action commenced on December 15, 1981.

*Count I*

This count essentially alleges a violation of constitutional rights by federal officers. Accordingly, if this Court has jurisdiction over the count, it arises from the provision governing federal questions, 28 U.S.C. § 1331. For the reasons which follow, this count shall be dismissed.

■ No constitutional right of the plaintiffs was violated. Plaintiffs have conceded that they have no right to purchase broadcast time. Indeed, the Supreme Court ruled so in *CBS v. DNC.* Instead, plaintiffs characterize the right at issue as "the right to request access and to have broadcasters make an independent determination of their requests without intimidation or interference by federal officials." Plaintiffs' Opposition of March 17, 1982, at 12. The extent to which defendants' status as "federal officials" is important to this claim is discussed below, in the context of whether defendants acted in the course of their official authority in connection with the matters alleged. Aside from the issue of defendants' status, no constitutional right has been infringed.

None of the statements allegedly made by the political defendants to the broadcasters rise to the level of "intimidation", duress, or threats. Several defendant Members of Congress or their agents allegedly "advised [the broadcasters] not to accept NCPAC's advertisements." Complaint, ¶ 40; *see also id.* ¶¶ 52, 54. Other defendant Members of Congress are accused of sending broadcasters "written memoranda intended to cause such broadcasters to reject NCPAC advertisements," *id.* ¶ 45, *see also id.,* ¶ 59. Yet aside from the assertions that these Members of Congress "used the power and prestige of their federal offices to cause the stations to refuse the advertisements," *id.,* ¶ 68, there is no allegation that they even hinted that they would take any retribution should the NCPAC advertisements be aired. Certainly, any truly coercive actions that the Members of Congress could have taken would appear to be beyond their official powers. For example, as they lack executive powers, they could have done nothing to interfere with the broadcasters' licenses. Such powers, of course, are lodged with the FCC. Moreover, to the extent that the alleged warnings to the broadcasters made reference to the possibility that stations could be held liable for defamatory statements made within the NCPAC advertisements, such warnings undoubtedly are not derived from the political defendants' official powers. One does not need to be a Member of Congress to bring a libel action. Finally, the allegations in count II that the broadcasters "manifested an agreement to join in the . . . conspiracy" to keep NCPAC's advertisements off the air, *see e.g., id.,* ¶ 87, belies the assertion that they were "intimidated." On the whole, the statements that the defendant Members of Congress are alleged to have made to the broadcasters are functionally indistinguishable statements that any person could have made to the broadcasters under the protections of the first amendment.

As the Supreme Court noted in *CBS v. DNC,* in enacting certain provisions of the Communications Act of 1934 "Congress intended to permit private broadcasting to develop with the widest journalistic freedom consistent with its public obligations." 412 U.S. at 110, 93 S.Ct. at 2090, *see also* 47 U.S.C. § 326 (providing that nothing in the Act may be construed as conferring powers of censorship upon the FCC and prohibiting the promulgation of any regulations interfering with the right of free speech by radio communication). Plaintiffs seek a guarantee that broadcasters be insulated from external information when making their editorial decisions as to what programs they will agree to broadcast for consideration. This would remove reason from discretion and create choice in a vacuum. The result would deny broadcasters their journalistic and intellectual freedom by censoring and/or constricting the information they may receive and rely upon in choosing what they will publish over the airwaves.

Moreover, inasmuch as the relief sought by plaintiffs would infringe upon the first amendment right of persons to communicate their views to broadcasters, it likewise would stifle the concomitant right of the broadcasters to listen to that speech. In any case, plaintiffs have suffered no constitutional deprivation by the political defendants' actions. As the communications between the Members of Congress or their agents and the broadcasters were protected by the first amendment, plaintiffs' remedy for any wrongs they believed had been done them thereby was not to stifle others' speech, but to speak up themselves. Throughout, plaintiffs were free to convey to the broadcasters their reasons why the NCPAC advertisements should be broadcast. Since the actions complained of did not violate any constitutional rights of plaintiffs, their complaint states no claim upon which relief can be granted under the equal protection clause of the fifth amendment or *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

■ Furthermore, even were it the case that plaintiffs suffered some constitutional harm, the facts alleged in the complaint fail to present sufficient "governmental action" upon which to base a claim under the first and fifth amendments. *See Public Utilities Commission v. Pollak,* 343 U.S. 451, 462–63, 72 S.Ct. 813, 820–821, 96 L.Ed. 1068 (1951) (first and fifth amendments restrict only federal government and not private persons). It is not enough that the defendants

be "federal officers." It is necessary that the actions complained of be committed by the defendants under color of the authority vested in them as federal officers. *See e.g., Payne v. Government of District of Columbia,* 559 F.2d 809, 823 (D.C.Cir.1977) (Tamm, J., concurring). The alleged actions of communicating with broadcast stations refer to conduct that would have been in the course of the political defendants' activities as candidates for office, rather than as Members of Congress. To decide otherwise would be to create a double standard: while incumbents would be precluded from making inquiries of broadcasters on the ground of "governmental action," non-incumbent candidates would be free to do so. It might well constitute an equal protection violation in that similarly situated persons—candidates for federal office—would not have equal rights to freedom of speech with respect to communications with broadcasters. As such, this count can be dismissed for want of subject matter jurisdiction in that no federal question is presented. 28 U.S.C. § 1331.

*Count II*

■ Here, plaintiffs allege a conspiracy among all of the various defendants to interfere with or deprive them of their constitutional rights to the free exercise of speech (in the advocacy of a candidate's election) and equal protection of the laws, in violation of 42 U.S.C. § 1985(3). That section provides a remedy, in the form of a civil action for damages, for the deprivation of various federal rights.[2] However, it does not create any rights of itself. *Great*

2. 42 U.S.C. § 1985 provides:
[Part One]:
"If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws; or of equal privileges and immunities under the laws;
[Part Two]:
or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws;
[Part Three]:

or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States;
[Part Four]:
or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of

*American Federal Savings and Loan Association v. Novotny,* 442 U.S. 366, 376, 99 S.Ct. 2345, 2351, 60 L.Ed.2d 957 (1979). Accordingly, since plaintiffs have suffered no deprivation of federal rights with respect to their underlying claim (*i.e.,* count I), plaintiffs state no claim for relief under the provisions of section 1985(3) concerning equal protection of the laws. Moreover, even were it the case that plaintiffs could establish some kind of federal right with respect to the opportunity to advertise on the airwaves, that would not be enforceable under section 1985(3) in that administrative remedies are available through the FCC. *See Novotny,* 442 U.S. at 375–378, 99 S.Ct. at 2350–2352 (employment discrimination not actionable under § 1985(3) because remedy already provided through Title VII of the Civil Rights Act of 1964). Furthermore, as noted above, the alleged actions of the political defendants do not rise to the level of "force, intimidation, or threat," which is a necessary element of a claim under the advocacy and voting provisions of section 1985(3).

Plaintiffs may well also have standing problems. Section 1985(3) among other things prohibits conspiracies designed to intimidate "any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person" as a Presidential or Vice-Presidential elector or a Member of Congress. NCPAC is not a "citizen." Moreover, while plaintiffs Dolan and Ware allege that they are entitled to vote, they do not aver that they are entitled to vote in the election in which the political defendants are or would be candidates. Dolan and Ware list their addresses as, respectively, Virginia and Louisiana; nothing in the alleged conspiracy concerns elections in either of those states.

In view of the above, it is unnecessary to consider the defendants' other arguments in support of their contention that this action should be dismissed, *i.e.,* that section 1985(3) requires an allegation that the defendants acted "under color of state law," which allegation is not present here; that plaintiffs do not constitute part of a class warranting protection from "invidious discrimination"—an "immutable class"—and therefore were not intended to be protected by this section; that no "overt act" of the conspiracy has been alleged; and that any intimidation of the broadcasters would confer jurisdiction upon them rather than plaintiffs.

In conclusion, it should be noted that there is no suggestion whatsoever that plaintiffs were denied the right always available to them under the first amendment to thoroughly express their point of view to the broadcasters on the question of whether their advertisements should be aired. Plaintiffs are free to present their case to the broadcasters just as the political defendants are alleged to have done. Their remedy is not money damages but, rather, more speech. *See Webster v. Sun Co.,* 561 F.Supp. 1184 at 1189–1190 (D.D.C.1983).

having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

Plaintiffs' equal protection argument would be derived from Part One; their claim for interference with their voting and advocacy rights would arise from Part Three.