**Joycelyn A. THOMPSON, Plaintiff,**

v.

**The INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, et al., Defendants.**

**Civ. A. No. 83–1845.**

United States District Court, District of Columbia.

Feb. 13, 1984.

As Amended Feb. 24, 1984.

Allen G. Siegel, Stephen J. Boardman, John R. Dwyer, Jr., Washington, D.C., for plaintiff.

Clinton J. Miller, III, Ernest W. DuBester, Highsaw & Mahoney, Washington, D.C., for defendants; Joseph P. Manners, Gen. Counsel, Intern. Ass'n of Machinists & Aerospace Workers, Washington, D.C., of counsel.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

Joycelyn A. Thompson brings this suit against the International Association of Machinists and Aerospace Workers ("IAM") and four officers of that organization alleging violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), the District of Columbia Human Rights Act of 1977, as amended, D.C.Code § 1–2501, *et seq.* ("D.C. Human Rights Act"),[1] Section 1 of the Civil Rights Act of 1966, 42 U.S.C. § 1981 ("§ 1981") and the Ku Klux Klan Act, 42 U.S.C. § 1985(3) ("§ 1985(3)") arising from her discharge from employment. Before the Court is defendants' motion for partial dismissal.

Plaintiff, a black woman, held the position of Assistant Director of the IAM Human Rights Department for four and one-half years until her discharge on June 29, 1982. The parties agree that as Assistant Director, plaintiff represented defendant IAM and took a national leadership role in organizations addressing the concerns of minorities and women and that she urged the IAM to provide black individuals and women with equal employment opportunity to obtain appointed positions within that union. Amended Complaint, ¶¶ 15, 20, 29. Following her discharge, plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), claiming discrimination based on race and sex culminating in her termination, and after receiving a Notice of Right to Sue from that agency, brought this action in June, 1983.

Plaintiff's complaint, as amended pursuant to leave granted by this Court's Order of December 2, 1983, alleges discriminatory discharge based on race in violation of Title VII and § 1981 (Count I), discriminatory discharge based on sex in violation of Title VII (Count II), discharge in retaliation for opposing defendants' employment practices in violation of Title VII (Count III), conspiracy to discriminate and retaliate against plaintiff in violation of § 1985(3) (Count IV) and discharge in violation of the D.C. Human Rights Act (Count V). Each of these claims except the § 1981 race discrimination claim is challenged on at least one ground in the motion now before the Court. The arguments advanced in defendants' motion, in the order in which they will be addressed, are that the claims of retaliatory discharge are outside of the original EEOC Complaint and therefore improper, that plaintiff has not exhausted her administrative remedies under Title VII and the D.C. Human Rights Act, that plaintiff's conspiracy claims are precluded by her Title VII claims, that the named individuals are improper defendants, and that the damages sought by plaintiff are not recoverable under Title VII or supported by factual allegations to justify recovery under § 1981 or § 1985(3).

### 1. *Claims of Retaliatory Discharge*

■ In the instant motion, defendants renew objections first raised in opposition to plaintiff's motion to add claims of retaliatory discharge, arguing that plaintiff's failure to include specific claims of retaliatory discrimination in her EEOC complaint mandates the dismissal of those claims here. Plaintiff's claims of retaliation arise logically from the administrative charge properly before the Court, and for the reasons stated in the Court's Order of December 2, 1983, defendants' argument is rejected.

### 2. *Exhaustion of Administrative Remedies*

■ Defendants contend that plaintiff's claims under both the D.C. Human Rights

---

1. Plaintiff's D.C. Human Rights Act claim is maintained under the pendant jurisdiction of this Court.

Act and Title VII should be dismissed for failure to exhaust administrative remedies. With respect to the D.C. Human Rights Act, this contention (which is raised in the motion but not supported in the accompanying points and authorities) can be rejected out of hand, as that statute does not require the filing of an administrative complaint as a prerequisite to suit. See D.C. Code § 1–2544 ("[a]ny person or organization ... *may* file with the [OHR] a complaint of a violation of the provisions of this chapter ..." (emphasis added)).

Title VII does impose certain procedural obligations on the complainants, as set forth at 42 U.S.C. § 2000e–5. Paragraph (c) of that section provides that in states having state or local laws prohibiting the unlawful employment practice alleged and establishing or authorizing a local authority to grant or seek relief from that practice, "no [district court] charge may be filed ... by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law." 42 U.S.C. § 2000e–5(c) (Section 706(c) of Title VII). The District of Columbia has such a local authority, the Office of Human Rights ("OHR") authorized to remedy discriminatory discharges based on race or sex in violation of the D.C. Human Rights Act, and on the basis of § 2000e–5(c), defendants argue that plaintiff's failure to pursue her administrative remedies through the OHR presents a jurisdictional bar to this suit.

Defendants apparently view the District of Columbia as a typical "deferral state," in which complaints of discrimination originally filed with the EEOC are routinely referred to the relevant state agency and deemed filed with the EEOC upon expiration of the 60-day period contemplated under § 2000e–5(c). See *Love v. Pullman Co.*, 404 U.S. 522, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972); 29 C.F.R. 1601.13 (1981). In fact, in the District of Columbia the EEOC's deferral function is altered considerably by a worksharing agreement between the EEOC and OHR. The terms of that agreement provide that each agency will take primary responsibility for processing all charges of which it is the original recipient (with certain exceptions not relevant here) and, "to facilitate the early resolution of charges", the OHR has "waived its exclusive rights to specific periods of initial processing" granted by Title VII for charges assigned by the agreement to EEOC for initial processing. See Worksharing Agreement, Appendix 1 to Plaintiff's Opposition to Defendants' Motion for Partial Dismissal. In other words, charges which would otherwise be subject to state or local review under § 2000e–5(c) bypass that step of administrative processing if initially filed with the EEOC. Plaintiff contends that the worksharing arrangement constitutes a waiver by OHR of its right to review claims under § 2000e–5(c); however, defendants assert that § 2000e–5(c) establishes a jurisdictional prerequisite not subject to waiver.

The threshold issue before the Court is whether the provisions of § 2000e–5(c) are indeed jurisdictional or whether, like the timely filing requirements of § 2000e–5(e) and (f) and statutes of limitations, they can be waived. See *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) ("filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit"). In reaching its holding in *Zipes*, the Supreme Court relied on the structure of Title VII, the Congressional policy underlying it and the reasoning of prior cases, and those factors likewise should be considered here.

The *Zipes* analysis applicable to time limitations under Title VII does not necessarily translate well to a discussion of exhaustion requirements. For example, the *Zipes* court placed strong emphasis on the language of § 2000e–5(e), the provision specifying the time for filing charges, which "does not speak in jurisdictional terms or refer in any way to the district courts." *Zipes* 102 S.Ct. at 1133. That filing provision reads simply: "A charge under this section shall be filed within one hundred and eighty days after the alleged employment practice occurred." Section 2000e–5(c), by contrast, provides that

where an alleged unlawful employment practice occurs in a state with local laws and an agency to address claims of discrimination, "no charge may be filed [in the district court] ... before the expiration of sixty days after proceedings have been commenced under the State or local law ..." On its face, § 2000e–5(c), unlike Title VII's timing provisions, does tie together initial recourse to the agency and subsequent recourse to a district court. *Compare Kizas v. Webster*, 707 F.2d 524, 546 (D.C.Cir.1983) (parallel analysis involving charge-filing requirements governing federal employment discrimination claims).

The provision at issue here and the one construed in *Zipes* can be distinguished on the basis of legislative history as well. Although the legislative record behind the timely filing requirement indicated that the purpose of that provision was to establish a "period of limitations" to prevent the pressing of stale claims, *Zipes* 102 S.Ct. at 1133, the Congressional intent behind § 2000e–5(c) was to afford state agencies "a limited opportunity to resolve problems of employment discrimination and thereby to make unnecessary resort to federal relief by victims of discrimination." *Porter v. District of Columbia*, 502 F.Supp. 271, 273 (D.D.C. 1980), quoting *New York Gaslight Club v. Carey*, 447 U.S. 54, 100 S.Ct. 2024, 64 L.Ed.2d 723 (1980) and *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979). Whether that screening function can be waived by the local agencies themselves is debatable. Although the legislative history apparently mandates that OHR be given an *opportunity* to consider plaintiff's claim, nothing in the statute seems to prevent OHR from declining that opportunity and delegating its function to EEOC.[2]

Language in case law from this jurisdiction indicates that exhaustion requirements under Title VII may be nonjurisdictional in nature:

> Properly understood, the exhaustion rule is not an end in itself: it is a practical and pragmatic doctrine that 'must be tailored to fit the peculiarities of the administrative system Congress has created.' Exhaustion under Title VII, like other procedural devices, should never be allowed to become so formidable a demand that it obscures the clear congressional purpose of rooting out ... every vestige of employment discrimination in the Federal government.

*President v. Vance*, 627 F.2d 353 (D.C.Cir. 1980), quoting *McKart v. United States*, 395 U.S. 185, 195, 89 S.Ct. 1657, 1663, 23 L.Ed.2d 194.

The Court need not decide at this juncture whether review by a state agency is a nonjurisdictional condition to suit which can be waived by the OHR or a jurisdictional prerequisite. If it is jurisdictional, plaintiff has satisfied the requirement of § 2000e–5(c) by filing her claim with the agency contractually obligated to act on behalf of OHR. In effect, by entering the worksharing agreement with EEOC, OHR is deemed to have "terminated" its review function within the meaning of § 2000e–5(c). Accord, *Gunn v. Dow Chemical*, 522 F.Supp. 1172 (S.D.Ind.1981) (state proceedings terminated where state agency waived its right to exclusive opportunity to resolve charge in worksharing agreement with EEOC); *Morgan v. Sharon Pennsylvania Board of Education*, 445 F.Supp. 142 (W.D.Pa.1978); *Steissberger v. Rockwell International Corp.*, 29 F.E.P. Cases 1273 (E.D.Wash.1982); *Yeung v. Lockheed Missiles & Space Co.*, 504 F.Supp. 422 (N.D. Cal.1980) (all holding state agency's waiver in worksharing agreement with EEOC

---

**2.** It is clear that this exhaustion provision cannot be waived at the *claimant's* option. See *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), construing § 14(b) of the Age Discrimination in Employment Act, 29 U.S.C. § 726(c), which contains the same language, policy, and legislative history as § 5000e–5(c). Drawing on the similarities be-

tween the two statutes, the Court held that "unless § 14(b) is to be stripped of all meaning, state agencies must be given at least some opportunity to solve problems of discrimination," and therefore "resort to administrative remedies in deferral states by individual claimants is mandatory, not optional." *Oscar Mayer* at 757–758, 99 S.Ct. at 2072–2073.

equivalent to termination of state proceedings).

On the other hand, if the provisions of § 2000e–5(c) are nonjurisdictional, OHR can waive its right of review entirely under the worksharing agreement. Accord, *Douglas v. Red Carpet Corp. of America*, 538 F.Supp. 1135 (E.D.Pa.1982). Under either theory, the same result is reached and the operation of § 2000e–5(c) will not mandate dismissal of plaintiff's claim.

### 3. *The § 1985(3) Claim*

Defendants raise a three-part challenge to plaintiff's claims under 42 U.S.C. § 1985(3), which makes available damages for certain civil rights violations resulting from discriminatory conspiracies.[3] Briefly summarized, defendants' arguments are that plaintiff lacks a substantive basis to support the purely remedial provisions of § 1985(3), that defendants cannot form a conspiracy within the meaning of § 1985(3), and that even if a § 1985(3) claim could lie against these defendants, plaintiff has not met the pleading requirements of the statute. These arguments are addressed in turn below.

Defendants correctly state, and plaintiff acknowledges, that § 1985(3) provides no substantive rights to plaintiff; it merely provides a remedy for violation of the rights it designates. *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 372, 99 S.Ct. 2345, 2349, 60 L.Ed.2d 957 (1979). The Supreme Court has expressly removed the guarantees of Title VII from the category of "designated rights" subject to redress under § 1985(3), holding that if a violation of Title VII could be asserted through § 1985(3), the complainant could avoid Title VII's detailed and specific remedial provisions and the administrative process which plays a

critical role in that scheme. *Novotny* at 376, 99 S.Ct. at 2351. If plaintiff's § 1985(3) claim rested solely upon alleged violations of Title VII rights, *Novotny* would preclude her action; however, as plaintiff also asserts substantive violations outside of Title VII, the § 1985(3) claim may be otherwise cognizable.

Plaintiff states in her opposition to defendants' motion to dismiss that violations of the D.C. Human Rights Act can provide the substantive basis for a 1985(3) claim, relying on *Life Insurance Co. of North America v. Reichardt*, 591 F.2d 499 (9th Cir.1979), for the proposition that the remedial provisions of § 1985(3) apply with equal force to deprivations of state and federal rights. Plaintiff's reliance on *Reichardt* is rejected here, as *Novotny*, which postdates *Reichardt* by several months, described § 1985(3) as a remedial statute "providing a civil cause of action when some otherwise defined *federal* right—to equal protection of the laws or equal privileges and immunities under the laws—is breached by a conspiracy." *Novotny* 442 U.S. at 376, 99 S.Ct. at 2351 (emphasis supplied). See also *National Conservative Political Action Committee v. Kennedy*, 563 F.Supp. 622, 626 (D.D.C.1983) ("That section [1985(3)] provides a remedy, in the form of a civil action for damages, for the deprivation of various federal rights.") Plaintiff's argument can also be rejected on the ground that neither the original nor the amended complaint incorporates plaintiff's allegations under the D.C. Human Rights Act as part of the § 1985(3) claim.

■ Apart from the Title VII and D.C. Human Rights Act claims, plaintiff alleges, in Count I of the Amended Complaint, that her discharge by defendants was an act of racial discrimination in violation of 42

---

**3.** In relevant part, Section 1985(3) provides:
"If two or more persons in any State or Territory conspire ... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; ... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in

furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators."

U.S.C. § 1981. The obstacles discussed above barring plaintiff's use of § 1985(3) remedies are not present here, as § 1981 is clearly a federal source of rights[4] and, unlike Title VII, "§ 1981 is not derived from a statutory scheme whose policies would be frustrated by the relitigation under another remedial statute." *Hudson v. Teamsters Local Union No. 957,* 536 F.Supp. 1138, 1147 (S.D.Ohio 1982). Therefore, this Court will follow those courts of other jurisdictions holding that the rights created by § 1981 are cognizable under § 1985(3). *Hudson* at 1147; *Witten v. A.H. Smith & Co.,* 567 F.Supp. 1063 (D.Md. 1983).

■ Defendants next argue that plaintiff's § 1985(3) claim should be dismissed because the individual defendants are employees and/or agents of defendant IAM and as such cannot conspire either among themselves or with the IAM. Although the intracorporate conspiracy doctrine, which precludes a conspiracy between or among a corporate entity and its officers, employees or agents, see *Dombrowski v. Dowling,* 459 F.2d 190 (7th Cir.1972), would support defendants' conclusion if the IAM enjoyed corporate status, that doctrine is utterly inapplicable here. Defendant IAM is an unincorporated labor union, and its officers or agents, unlike the officers or agents of a corporation, can be recognized as individual actors capable of entering a conspiracy within the meaning of § 1985(3). See *Bailey v. Boilermakers Local 667,* 480 F.Supp. 274 (N.D.W.Va.1979) (denial of motion to dismiss § 1985(3) claim against union).

■ Finally, defendants contend that plaintiff has failed to plead the specific factual allegations necessary to establish a conspiracy under § 1985(3). Under *Griffin v. Breckenridge,* 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1970), plaintiff's complaint must allege a concerted effort on the part of defendants to deprive plaintiff of her civil rights based on a class-based discriminatory animus, and must allege an act in furtherance of the object of

the conspiracy. See *Morgan v. District of Columbia,* 550 F.Supp. 465, 470 (D.D.C. 1982); *Mundy v. Weinberger,* 554 F.Supp. 811, 823 n. 37 (D.D.C.1982).

Defendants' contention that plaintiff's complaint asserts only a broad conclusory allegation of conspiracy is unfounded. The § 1985(3) claim (Count IV of the Amended Complaint), read in conjunction with the factual allegations of paragraphs 9 to 40 which are incorporated by reference within Count IV, amply plead concerted action to discriminate against plaintiff on the basis of her race, and allege that defendants impeded plaintiff's work performance and discharged her from her employment in furtherance of the alleged conspiracy. At this stage of the litigation, plaintiff need not prove her claim but must only plead it, as she has done. Her claim of conspiracy under § 1985(3) is therefore properly before the Court.

*4. Actions Against Individual Defendants Winpinsinger, Poulin, Kourpias and Johnson*

■ In addition to the IAM, plaintiff names as defendants to her complaint four individual officers who allegedly either recommended her discharge or made the final discharge decision. The four officers move for dismissal of the claims against them, arguing that they are not "employers" subject to Title VII litigation, and three of the officers further argue that they were not named in plaintiff's charge of discrimination filed with the EEOC and therefore cannot be sued.

Title VII defines the term "employer" to include

> a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, *and any agent of such a person ...*" 42 U.S.C. § 2000e(b) (1974) (emphasis added);

---

**4.** Whether § 1985(3) can redress statutory as well as constitutional deprivations was left open

by *Novotny* and has not been decided in this Circuit.

see also *EEOC v. Printing Industry of Metropolitan Washington,* 26 F.E.P. Cases 149, 150 (D.D.C.1981). The definition "employer" is to be liberally construed to effectuate EEOC's remedial purpose, *EEOC v. Wooster Brush Co.,* 523 F.Supp. 1256, 1261 (N.D.Ohio 1981); see also *Bell v. Brown,* 557 F.2d 849, 853 (D.C.Cir.1977), and courts interpreting this definition have found individuals subject to suit as agents under § 2000e(b) based on their participation in the decisionmaking process that forms the basis of the plaintiff's charge of discrimination. *Jones v. Metropolitan Denver Sewage Disposal District No. 1,* 537 F.Supp. 966, 970 (D.Colo.1982); *Bradley v. Rockland County Community Mental Health Center,* 25 F.E.P. 225, 228 (S.D. N.Y.1980). Following those cases, this Court finds that the named individual defendants are "employers" within the meaning of Title VII.

■ Plaintiff's failure to name in her administrative charge those participants in the decisionmaking process leading to her discharge raises thornier issues under Title VII.[5] In general, a plaintiff may bring a Title VII action only "against the respondent named in the [administrative] charge ..." 42 U.S.C. § 2000e–5(f)(1), but that provision can be modified to minimize the effects of procedural errors on the part of complainants unrepresented by counsel at the administrative stage. *Evans v. Sheraton Park Hotel,* 503 F.2d 177, 183 (D.C.Cir. 1974). Circumstances compelling such modification are lacking here, as plaintiff was well aware of the relationship of the IAM officers to her claim at the time of the EEOC charge, contra, *Evans* at 183 (defendant sought to be joined was "obscure party" requiring court action to determine whether or not its presence in the action was necessary for complete relief).

The purpose of the administrative proceeding required under Title VII is to give notice to the charged party and to facilitate conciliation. *Shehadeh v. Chesapeake & Potomac Telephone Co.,* 595 F.2d 711 (D.C.Cir.1978); *Evans* at 183. In this case, plaintiff received her Notice of Right to Sue before conciliation had been undertaken. Although the absence of conciliation efforts will not bar a civil action by the plaintiff, it is imperative that the EEOC be "afforded a reasonable *opportunity* to investigate violations assertedly committed by the putative defendant ..."; that is, the charge must "fairly apprise the Commission that the complainant's purpose is to seek redress of statutory infractions *by a particular employer.*" *Shehadeh* at 728 (emphasis added). This principle is consistent with the minimal requirements reflected in the EEOC's regulations: a charge need only be "a written statement sufficiently precise to identify the parties and to describe generally the action or practices complained of." 29 C.F.R. § 1601.11 (1977); *Shehadeh* at 727. Held to those standards, plaintiff's administrative complaint cannot fairly be found to allege discriminatory conduct on the part of the defendants Poulin, Kourpios and Johnson.[6] Accordingly, they are not proper defendants to this complaint and shall be dismissed.

5. *Claims for Compensatory and Punitive Damages*

■ Defendants challenged plaintiff's claim for compensatory and punitive damages on the grounds that Title VII does not authorize such damages and that plaintiff has not supported her request for damages with allegations that defendants knowingly or recklessly violated plaintiff's rights. The first of these points is conceded. Plaintiff's Memorandum of Point and Authorities in opposition to Defendants' Mo-

---

**5.** The administrative complaint alleges only that defendant Winpinsinger "and others jointly and severally terminated [plaintiff's] employment" as Assistant Director.

**6.** Although the name of Clark Johnson is mentioned in the administrative charge, there is no allegation in the charge of discriminatory con-

duct by him. Plaintiff merely stated that defendant Winpinsinger "stated further that I seem to be threatening Clark Johnson ..."; she did not address Johnson's role in making the decision to discharge her. This passing reference is insufficient to put defendant Johnson on notice that he was a potential defendant.

tion for Partial Dismissal at 27. However, compensatory and punitive damages are available under § 1981 and § 1985(3) (redressing violations of § 1981), see *Novotny* 442 U.S. at 376, 99 S.Ct. at 2351; *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 460, 95 S.Ct. 1716 (1975), *Metrocare v. WMATA,* 679 F.2d 922, 927 (D.C.Cir.1982). To support a claim for compensatory damages, plaintiff need only allege that she suffered physical or emotional harm as the result of unlawful conduct by defendant, see *Casas v. First American Bank,* 31 F.E.P. Cases 1479, 1482–83 (D.D.C.1983) as she has done at paragraphs 25 and 43 of her complaint.

Punitive damages have traditionally been awarded in civil rights cases under § 1981 and § 1983 where bad faith and malice are shown. *Casas* at 1482–83; *Acosta v. University of District of Columbia,* 528 F.Supp. 1215, 1225 (D.D.C.1981). The Supreme Court recently expanded the bases of punitive damage claims under § 1983 to include "reckless and callous disregard for the plaintiff's rights, as well as intentional violations of federal law", the latter of which is alleged by plaintiff at paragraphs 9 and 35 of her complaint. *Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 1637, 75 L.Ed.2d 632 (1983). The reasoning of *Smith v. Wade* is equally applicable to § 1981 cases, and plaintiff's allegations of intentional discrimination by defendants are sufficiently adequate to support her claim for punitive damages. Accord, *Cochetti v. Desmond,* 572 F.2d 102, 106 (3d Cir.1978); *Acosta* at 1225 (both applying identical punitive damage standard to cases under § 1981 and § 1983).

In accordance with this Memorandum Opinion, it is, this 13th day of February, 1984

ORDERED that defendants George Poulin, George J. Kourpias and Clark Johnson be and they hereby are dismissed as defendants to plaintiff's claims under Title VII of the Civil Rights Act of 1964 to this action, and it is further

ORDERED that in all other respects, defendants' motion for partial dismissal is denied.